**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **QUINCY BERNARD JONES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FEATHERSTONE CONDOMINIUM HOMEOWNERS ASSOCIATION, INC., *et al.*,**<br><br>**Defendants.** | ) | **CIVIL ACTION NO. 5:26-CV-389 (MTT)** |

**ORDER**

On September 9, 2026, Plaintiff Quincy Bernard Jones, proceeding pro se, filed his complaint. ECF 1. That same day, he filed a motion to proceed *in forma pauperis* ("IFP"). ECF 2. For the reasons stated, Jones's motion to proceed IFP (ECF 2) is **GRANTED**. But Jones's complaint lacks important factual allegations that Jones may have omitted because of his pro se status. Thus, the Court **ORDERS** Jones to amend his complaint by **October 30, 2026**.

## I. DISCUSSION

### A. Motion to Proceed IFP

28 U.S.C. § 1915(a) governs motions to proceed IFP. It provides:

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such

> prisoner possesses that the person is unable to pay such fees or give security therefor.[1]

When considering a motion to proceed IFP filed under § 1915(a), "the only determination to be made by the court is whether the statements in the affidavit satisfy the requirement of poverty." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (citation modified). A plaintiff is not required to show he is "absolutely destitute." *Id.* (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). Rather, "an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.* "A court may not deny an IFP motion without first comparing the applicant's assets and liabilities in order to determine whether he has satisfied the poverty requirement." *Thomas v. Chattahoochee Jud. Cir.*, 574 F. App'x 916, 917 (11th Cir. 2014) (citing *Martinez*, 364 F.3d at 1307–08).

However, § 1915(a) "should not be a broad highway into the federal courts." *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). Rather, it "conveys only a privilege to proceed without payment to only those litigants unable to pay costs without undue hardship." *Mack v. Petty*, 2014 WL 3845777, at *1 (N.D. Ga. Aug. 4, 2014). District courts have "wide discretion" in deciding whether a plaintiff can proceed IFP, and "should grant the privilege sparingly," especially in civil cases for damages. *Martinez*, 364 F.3d at 1306.

---

[1] "Despite the statute's use of the phrase 'prisoner possesses,' the affidavit requirement applies to all persons requesting leave to proceed IFP." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004).

The Court has reviewed Jones's IFP affidavit. Jones's affidavit establishes that he cannot pay the court fees without undue hardship. ECF 2. Thus, Jones's motion to proceed IFP (ECF 2) is **GRANTED**.

**B. Frivolity Review**

Section 1915 does not create an absolute right to proceed IFP in civil actions. "Where the IFP affidavit is sufficient on its face to demonstrate economic eligibility, the court should first docket the case and then proceed to the question of whether the asserted claim is frivolous." *Martinez*, 364 F.3d at 1307 (citation modified). When allowing a plaintiff to proceed IFP, the Court shall dismiss the case if the Court determines that the complaint (1) "is frivolous or malicious"; (2) "fails to state a claim on which relief may be granted"; or (3) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A claim is frivolous if it "has little or no chance of success," meaning that it appears "from the face of the complaint that the factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'" *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). "A dismissal under § 1915(e)(2)(B)(ii) for failure to state a claim is governed by the same standard as a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)."[2] *Thomas v. Harris*, 399 F. App'x 508, 509 (11th Cir. 2010) (citing *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997)). However, because Jones is proceeding pro se, his "pleadings are held to a less stringent standard than pleadings

[2] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff*." In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 n.4 (11th Cir. 2016) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (citation modified). Even so, "the district court does not have license to rewrite a deficient pleading." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008).

*1. Failure to Accommodate*

Jones alleges that Defendants Featherstone Condominium Homeowners Association ("Featherstone"), CEO Steven Sieting, Secretary Kannisha Homer, and CFO Robert King violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, by failing to provide Jones with a reasonable accommodation. ECF 1 at 1–5. Specifically, Jones requested a mold study of the exteriors of neighboring units. *Id.* at 3. "Under the FHA ... it is unlawful to discriminate against a renter with disabilities by refusing 'to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'" *Philippeaux v. Apartment Inv. and Management Co.*, 598 F. App'x 640, 643–44 (11th Cir. 2015) (quoting 42 U.S.C. § 3604(f)(3)(B)). Jones must plead four things to establish a failure to accommodate claim: "(1) [he is] disabled within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an [equal] opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the accommodation." *Id.* at 644 (citation omitted). Nonetheless, "[t]he FHA's reasonable accommodation provision requires only those accommodations that may be *necessary* ... to afford *equal* opportunity to use and enjoy a dwelling." *Id.* (quoting *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008)).

First, Jones alleges that he "has a physical impairment (COPD & asthma) that substantially limits major life activities (breathing)." ECF 1 at 2 ¶ 1. As defined by the FHA, a person is handicapped if they have "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) [they are] regarded as having such an impairment." 42 U.S.C. § 3602(h). The Court will assume, without deciding, that Jones's ailments constitute handicaps under the FHA for the purpose of this screening order. As such, Jones has adequately pleaded the first element of his claim.

The Court examines the second and third elements together. According to his complaint, Jones lives in unit 100 of a condominium complex managed by Featherstone. ECF 1 at 3. Jones says he "can smell mold coming from units 102-108." *Id.* Jones alleges he requested, by text, letter, and email, that a mold test be conducted on the exterior of those seven units. ECF 1 at 3. He claims that the mold study "would have directly mitigated and/or ameliorated the impact of his disability on his enjoyment of the property." *Id.* at 2 ¶ 4. Even taking these allegations as true, Jones has not included enough facts to make the second and third elements of his failure to accommodate claim plausible. While it is true that no mold study was conducted of the exterior of the other units, Jones does not plausibly allege why the study is a necessary and reasonable accommodation. *See Philippeaux*, 598 F. App'x at 644; *Schaw v. Habitat for Humanity of Citrus Cty.*, Inc., 938 F.3d 1259, 1270 (11th Cir. 2019). Jones's allegations establish that CEO Sieting sent someone to test for mold in Jones's unit. ECF 1 at 3–4. Sieting texted Jones that the test showed mold levels within the normal range and then placed the paperwork confirming the normal results in Jones's mailbox.

*Id.* at 3–4; ECF 1-1 at 2. Still, Jones complains that the mold report did not include an "outdoor baseline sample" and that "mold naturally drifts inside." ECF 1 at 7. But the samples taken inside Jones's unit revealed levels within normal range. ECF 1-1 at 2. Jones does not allege any facts explaining why, despite those results, testing the exteriors of neighboring units was necessary to afford him an equal opportunity to use and enjoy his dwelling. Thus, Jones does not plausibly allege that the requested accommodation was necessary or reasonable.

Finally, Jones alleges that Defendants Secretary Homer and CFO King never responded to his email requests for accommodation. ECF 1 at 3. "The FHA does not demand that housing providers immediately grant all requests for accommodation." *Bhogaita v. Altamonte Heights Condominium Ass'n, Inc.*, 765 F.3d 1277, 1285–86 (11th Cir. 2014) (citation omitted). However, "[t]he failure to make a timely determination after meaningful review amounts to constructive denial of a requested accommodation, 'as an indeterminate delay has the same effect as an outright denial.'" *Id.* at 1286 (quoting *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000)). As noted above, though, Sieting responded to Jones's requests, sent someone to inspect Jones's property, responded to Jones's texts regarding the results of the study, and provided Jones with a copy of the report indicating the mold was within normal range. ECF 1 at 3–5; ECF 1-1. Thus, Jones's request received a timely determination. Although Defendants did not conduct the specific mold study Jones requested, their failure to do so does not, without more, establish a violation of the FHA.[3]

---

[3] Jones also includes an allegation that the "mold tester" saw water damage on the exterior of Jones's unit and that Featherstone failed to repair or fix it. ECF 1 at 3–4. But Jones does not explain how water damage to a unit found to be free of mold relates to his request for mold testing in other units or his retaliation claim.

*2. Retaliation*

Jones also asserts a claim for retaliation under § 3617 of the FHA. ECF 1 at 4–5. Section 3617 prohibits retaliation for the exercise of a right protected by the FHA. 42 U.S.C. § 3617 ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any person ... on account of his having exercised or enjoyed ... any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."). "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Philippeaux*, 598 F. App'x at 644 (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001)). Protected activities include, as the HUD regulation states, having "made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. § 100.400(c)(5).

Even assuming Jones's conduct meets the first element, he fails to allege that the defendants took any adverse action against him. ECF 1 at 1–8. The relevant question is whether Featherstone's conduct qualifies as coercion, intimidation, threats, or interference. *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 858 (11th Cir. 2010) (holding that the plaintiffs must prove that defendants "coerce[d], intimidate[d], threaten[ed], or interfere[d]" with the exercise of a right protected by the FHA). In other words, the adverse action must be sufficiently harmful to deter a reasonable person in the plaintiff's circumstances from engaging in the protected activity. *See Bone v. Vill. Club, Inc.*, 223 F. Supp. 3d 1203, 1218–19 (M.D. Fla. 2016). "While the Eleventh Circuit has not prescribed the precise magnitude of conduct required by § 3617, it did hold that

a cause of action arose where plaintiff's neighbors threatened 'to break [him] in half if he did not get out of the neighborhood' and hit his truck while shouting obscenities and spitting at him." *Dulworth Fam. L.P. v. 400 LA Peninsula Condo. Ass'n, Inc.*, 2012 WL 11794802, at *3 (M.D. Fla. July 23, 2012) (quoting *Sofarelli v. Pinellas Cnty.*, 931 F.2d 718, 722 (11th Cir. 1991)). "At the other end of the spectrum, complaints for violating community rules and towing a car that was leaking oil do not rise to the level of conduct required by § 3617." *Id.* (citing *Wood v. Briarwinds Condominium Ass'n Bd. of Dirs.*, 369 F. App'x 1, 3–4 (11th Cir. 2010)).

"Regardless of where the line is drawn, it is clear that a plaintiff must allege at least some egregious conduct that interfered with the exercise of his or her Fair Housing Act rights. This conduct, of course, must be something more than the mere violation of §§ 3603, 3604, 3605, or 3606." *Id.* "Otherwise, 'every allegedly discriminatory denial of housing under § 3604(a) [or any other enumerated section] would also constitute a violation of § 3617 in that the denial 'interfered' with [the plaintiff's] Fair Housing Act rights.'" *Id.* (quoting *Frazier v. Rominger*, 27 F.3d 828, 834 (2d Cir. 1994)). "Congress did not intend 'such a statutory overlap.'" *Id.*; *see also Solodar v. Old Port Cove Lake Point Tower Condo. Ass'n, Inc.*, 2012 WL 1570063, at *8 (S.D. Fla. May 2, 2012) (dismissing retaliation claim that was simply a "recast" of the plaintiffs' § 3604 claim).

Here, Jones asserts the conclusory statement that "[i]t's further app[are]nt that Mr. Sieting retaliated against [Jones] due to [Jones] requesting a reasonable housing accommodation." ECF 1 at 4. The only other allegation that might conceivably be construed as an adverse action is that Sieting somehow "rigged up the mold test" and then refused to continue texting about the matter after Jones sent Sieting several texts

demanding more information. *Id.* at 4–5. But Jones does not include any plausible allegations that the report was fraudulent. He only asserts that because Sieting would not provide him with the name of the individual who conducted the test, Jones has "no other reason but to believe the mold test is questionable, incomplete and invalid." *Id.* at 4. But Jones admits that Sieting gave him the report, which is attached to his complaint and includes the company's name, address, and the name of the Laboratory Manager who approved the results. ECF 1-1 at 1. Regardless, being ignored is not enough to state a claim under the FHA retaliation provision. *Wood*, 369 F. App'x at 3–4. Thus, Jones fails to state a claim for retaliation under the FHA.

*3. Remaining State Law Claims*

Jones also asserts a claim under the Georgia Fair Housing Act ("GFHA"), O.C.G.A. § 8-3-200 *et seq*. ECF 1 at 1. "Under the [GFHA,] it is a discriminatory housing practice to 'refus[e] to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'" *Leslie v. 1125 Hammond*, LP, 368 Ga. App. 793, 795 (2023) (quoting O.C.G.A. § 8-3-202(a)(7)(B)(ii)). "Given that the [GFHA] and the FHA are nearly identical, [Georgia courts] consider federal cases construing the FHA persuasive precedent when considering a claim under the [GFHA]." *Id.* at n.3. Thus, Jones's GFHA claim fails for the same reasons his FHA claims do.[4]

In sum, although Jones provides some factual allegations, he fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B) (stating that a

[4] Near the end of his complaint, Jones includes the line "Breach of Fiduciary Duty: (Ga Code § 14-3-830)." ECF 1 at 7. To the extent that he intends to assert a state law breach of fiduciary duty claim, he fails to allege any facts supporting that claim. Thus, he fails to state a claim for relief.

court is required to dismiss a case brought by a pro se plaintiff if it (1) is frivolous, or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief). However, given Jones's pro se status, the Court will afford him an opportunity to amend his complaint to state viable claims. *See Duff v. Steub*, 378 F. App'x 868, 872 (11th Cir. 2010) (per curiam) ("When it appears a pro se plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the pro se plaintiff an opportunity to amend his complaint instead of dismissing it.").

For these reasons, Jones is **ORDERED** to amend his complaint to include all facts that he wishes to make a part of these proceedings and cite the appropriate statutory or constitutional authority for bringing his claims. Jones shall have until **October 30, 2026** to file his amended complaint.

In the "statement of claims" section of his amended complaint, Jones must link any claims he makes to a named defendant. If Jones fails to link a named defendant to a claim, the claim will be dismissed; if Jones makes no allegations in the body of his complaint against a named defendant, that defendant will be removed from the action.

Jones must provide enough facts to plausibly demonstrate that each defendant's actions or omissions resulted in the violation of his rights under a specific law. It is also recommended that, when drafting his "statement of claims," Jones list numbered responses to the following questions (to the extent possible) along with the name of each defendant:

(1) What did each defendant do (or not do) to violate his rights?

(2) When did each action occur?

(3) How was Jones injured as a result of each defendant's actions?

The amended complaint will take the place of and supersede Jones's original complaint. *Schreane v. Middlebrooks*, 522 F. App'x 845, 847–48 (11th Cir. 2013). Jones may not refer to, or incorporate by reference, his previous complaint. The Court will not look back to the facts alleged in the original complaint once the amended complaint is filed; the Court will only consider the facts in the amended complaint when it conducts the frivolity review required by § 1915(e)(2)(B). *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (holding that the filing of an amended pleading renders the previous pleading a "legal nullity").

After Jones files his amended complaint, the Court will conduct a frivolity review and, if necessary, dismiss any claims pursuant to 28 U.S.C. § 1915(e)(2)(B). No defendant shall be served until after the Court completes its frivolity review of the amended complaint.

**C. Fed. R. Civ. P. 11 Obligations**

The Court informs Jones of his obligations under Rule 11 of the Federal Rules of Civil Procedure, particularly Rule 11(b), which governs Jones's representations to the Court.

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

**D. Artificial Intelligence**

Finally, the Court has seen a marked increase in the use of artificial intelligence ("AI") by unrepresented parties, who may not understand fully their pleading obligations. It is common knowledge that AI can produce what have become known as hallucinations. This happens frequently in responses to legal-related prompts. AI often provides false legal citations and inaccurate summaries of legal authorities and principles. Courts have severely sanctioned lawyers and litigants who have included hallucinations in their filings. To assist Jones in meeting his pleading obligations, the Court **ORDERS** the following:

**In all pleadings, including Plaintiff's amended complaint, Plaintiff shall include a signed statement certifying that Plaintiff has verified the accuracy of all facts and all legal authorities cited and legal theories advanced in the pleading. Failure to comply with this paragraph shall result in sanctions, including, if appropriate, dismissal of this lawsuit.**

## II. CONCLUSION

Pursuant to 28 U.S.C. § 1915 and for the reasons set forth above, Jones's motion to proceed IFP (ECF 2) is **GRANTED**, and Jones is **ORDERED** to amend his complaint no later than **October 30, 2026**.

**SO ORDERED**, this 9th day of October, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT